# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON CHRISTENSEN, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF OMAHA, a political subdivision of the State of Nebraska;<br><br>Defendant. | 8:17CV128<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Summary Judgement, ECF No. 28, filed by Defendant City of Omaha (the City). For the reasons stated below, the Motion will be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

In 2015, while working as an Omaha Police Department (OPD) officer, Plaintiff Jason Christensen sought leave under the Family Medical Leave Act (FMLA) to get

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

treatment for his alcoholism. Christensen was granted FMLA leave in April 2015, until he exhausted his leave on or about July 18, 2015.

Christensen sought voluntary inpatient alcohol treatment at Valley Hope from approximately April 26, 2015, through May 17, 2015. Christensen did not believe the treatment at Valley Hope was successful in treating his alcoholism.

On May 20, 2015, OPD officer Brian Gerrity observed Christensen drinking and driving and contacted the La Vista police to get Christensen to give up the keys to his vehicle. Christensen was disorderly and verbally abusive but was not arrested.

On May 21, 2015, Gerrity, OPD officer Jennifer Hansen, and Sgt. Mary Kirchoffer attempted to contact Christensen and eventually located him at a restaurant with his daughter. They believed he was intoxicated based on his appearance, slurred speech, and staggering gait. Hansen drove Christensen's truck home and she and Kirchoffer negotiated with Christensen for several hours until they finally convinced him to go to Bergan Mercy Hospital. Christensen was admitted because his blood alcohol level was over .20.

On May 21, 2015, Deputy Chief of Police Elizabeth Davis wrote a letter to Christensen which stated "[p]er Chief Todd Schmaderer, this letter is to notify you that due to concerns about your continued abuse of alcohol, you are being ordered to comply with the recommendations of Bergan Mercy Hospital medical staff and your counselor, Stephanie Levy."[2] ECF No. 30-2, Page ID 155. The letter went on to state that "[i]f you

---

[2] Stephanie Levy is a therapist who Christensen saw a few times after a referral by OPD benefits manager Stephanie Unger but Christensen did not "really consider her his therapist." Christensen Dep., ECF No. 33-3, Page ID 258.

fail to comply with the recommended treatment plan you are subject to discipline up to and including termination." *Id.*

After his discharge from Bergan Mercy Hospital, based on the recommendation of Levy, the City required Christensen to complete inpatient substance abuse treatment at Bryan West and any recommended after care before returning to work. Davis Letter 5/22/15, ECF No. 33-4, Page ID 157; Schmaderer, ECF No., 30-1, Page ID 151. These requirements were set forth in a supplement to the May 21, 2015, letter. Davis Letter 5/22/15, ECF No. 33-4, Page ID 157. Christensen was admitted to Bryan Hospital West, for inpatient treatment on May 22, 2015.

Christensen was released from Bryan Hospital West on June 1, 2015, and on the same day acknowledged receipt of a letter from Acting Chief of Police Greg Gonzalez outlining the steps that Christensen was required to take prior to returning to work. Gonzalez Letter 6/1/15, ECF No. 30-4, Page ID 160. These steps included participating in an intensive outpatient/relapse prevention program; contacting his Alcoholic Anonymous (AA) sponsor and providing his or her name to Human Resources with a release allowing the City to speak to the sponsor; attending AA meetings every day for 90 days and turning in signed accountability cards to Unger on a weekly basis; and continuing to meet with therapist, Stephanie Levy. *Id.* The letter stated that "[b[y your signature below, you hereby agree to these terms." *Id.* at 161. Christensen acknowledged his signature on the correspondence. Christensen Dep., ECF No. 33-3, Page ID 264. After checking with Christensen's treatment providers, Unger learned[3] that he had

---

[3] Christensen objects to statements in Unger's affidavit about information she received by contacting Christensen's healthcare providers as hearsay. The statements in her affidavit will not be

3

attended intensive outpatient sessions on June 1st; attended but left early on June 3rd, 5th, 10th, and 12th; failed to attend on June 8th; and missed a scheduled appointment with Levy on June 10th. Unger Aff., ECF No. 30-13, Page ID 184-85. Christensen testified that although he did attend daily AA meetings, he did not turn in accountability cards to Unger because he did not know he was supposed to do so and because the cards had been sent to his OPD email which he did not think he could access.[4] Christensen Dep., ECF NO 33-3, Page ID 264.

On June 18, 2015, Christensen received a citation for driving under the influence (DUI). Christensen was placed on administrative leave with pay. Schmaderer Letter, ECF No. 30-4, Page ID 162. As part of his administrative leave, Christensen was prohibited from engaging in outside employment which would require use of his police authority; required to be at his residence between 8:00 a.m. and 4:00 p.m., Monday through Friday; and required to be available by telephone. *Id.*

After his DUI citation, Christensen voluntarily entered inpatient alcohol treatment at Keystone Treatment Center and was released on July 22, 2015. Upon discharge, Christensen agreed to Keystone's Continuing Care Plan which required, in part, that he "[a]ttend and complete the intensive outpatient treatment with Arbor Family Counseling." Keystone Records, ECF No. 30-15, Page ID 220. The Plan stated that his initial

---

considered to prove the truth of the matter asserted, Christensen's noncompliance. Fed. R. Evid. 801. However, the statements will be considered to prove the effect of the statements on Unger, *i.e.*, that the statements led her to believe Christensen was not compliant.

[4] In support of Christensen's assertion that he did not have access to his OPD email he cites to his deposition testimony that on August 17, 2015, "I tried to email and that's when my email wasn't working, so–I shouldn't say that's when–I remember that's when I noticed it wasn't working." Christensen Dep., ECF No. 33-3, Page ID 271. He also cites to his testimony that "[w]hen this all ended, I tried to send an email, and I couldn't." *Id.* at 264. This testimony does not demonstrate that Christensen did not have access to his email at the time the accountability forms were sent on June 2, 2015.

appointment was scheduled for July 24, 2015, with Dr. John Cannon.[5] *Id.* The Plan also stated that Christensen was to "continue individual counseling to deal with his psychological problems" and that he had an appointment scheduled with Levy on July 29, 2015. *Id.* He was also required to attend AA meetings on a regular basis. *Id.*

Unger checked with Christensen's treatment providers pursuant to the waivers Christensen signed allowing her to do so and found that as of July 31, 2015, Christensen had not contacted Dr. Cannon or shown up for any group meetings[6] and that Christensen had rescheduled and then cancelled his meeting with Levy.[7] Unger Aff., ECF No. 30-13, Page ID 185-86. Unger was unable to confirm Christensen's attendance at any AA meetings. *Id.* Unger shared this information with the OPD command staff on August 4, 2015. *Id.* Christensen testified that he had attended AA meetings during this time. Christensen, ECF No. 33-3, Page ID 271. On August 17, 2015, Chief Schmaderer sent members of the Omaha Police Union to Christensen's home to inform him that he had only an hour or two to decide if he wanted to retire or be terminated. Christensen Dep., ECF No. 33-3, Page ID 271. Christensen's request for additional time to decide was denied and he chose to retire. *Id.*

---

[5] Dr. Cannon is one of Christensen's therapists and is affiliated with Arbor Family Counseling. Pl's. Opp'n Br., ECF No. 33, Page ID 239; Christensen Dep., ECF No., 33-3, Page ID 268.

[6] There is a dispute of fact as to whether Christensen informed Unger that he was unable to meet with Dr. Cannon and attend the intensive outpatient treatment due to the need to care for his children during his ex-wife's surgery. This dispute is not material and, viewing the facts in the light most favorable to Christensen, the Court will assume Christensen timely informed both Unger and Dr. Cannon of the reason he was unable to meet with Dr. Cannon and attend the intensive outpatient treatment program.

[7] Again, Christensen objects to Unger's statements in her affidavit about information she received by contacting Christensen's healthcare providers as hearsay. As explained in *supra* n.4 the statements will be considered only for the effect of the statements on Unger, *i.e.*, that the statements led her to believe Christensen was not compliant.

Christensen filed this action on April 12, 2017, pleading claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 48-1104.[8] On August 31, 2017, this Court dismissed the causes of action against the Omaha Police Officers Association and OPD.[9] ECF No 13. The remaining claims, Claims I, II, & III, are pled against the City for regarding Christensen as disabled, subjecting him to discriminatory terms of employment, and retaliating against him. The City filed a Motion for Summary Judgment seeking dismissal of all three claims.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920,

---

[8] The Complaint also stated generally that OPD's actions toward Christensen violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, Compl. ¶ 5 & n.1, ECF No. 1, Page ID 2, and that Title VII prohibits the type of retaliation alleged in Claim III, *id.* ¶ 39, Page ID 10.

[9] The claims against OPD were dismissed because the Court determined they were subsumed in claims against the City of Omaha. Order, ECF No. 13, Page ID 84.

923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

7

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### I. ADA Discrimination[10]

Christensen claims he was subject to discriminatory terms and conditions of employment in violation of the ADA and NFEPA. In his brief, he states that "[the City] discriminates against disabled alcoholics through its treatment of officers charged with DUI." Pl. Opp'n Br., ECF No. 33, Page ID 245. "Christensen contends [the City] treats employees–not diagnosed as alcoholics–with the option to return to work whereas OPD refused to provide him that opportunity because he is an alcoholic and disabled." *Id*. Christensen argues that the discipline he received was harsher than that of "OPD's officers who were not disabled but driving drunk." *Id*.

"To establish a prima facie case of disability discrimination, [Christensen] must show that (1) [he] has a disability within the meaning of the . . . [ADA], (2) [he] is qualified

---

[10] "An employer regards the employee as disabled when 'it mistakenly believe[s] that [the employee's] physical ailments substantially limit[ ] his ability to work.'" *Kozisek v. Cty. of Seward, Nebraska*, 539 F.3d 930, 935 (8th Cir. 2008) (quoting *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 989 (8th Cir.), *cert denied*, 552 U.S. 817 (2007)). Is it undisputed that Christensen is a person with a disability, specifically alcoholism, and it is not necessary for the Court to analyze his claim for discrimination based on the City regarding him as disabled.

8

to perform the essential functions of h[is] job, with or without reasonable accommodation, and (3) [he] suffered an adverse employment action because of h[is] disability." *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019) (internal citation and quotations omitted). The employer must then show a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To prevail, the plaintiff must show that the defendant's proffered reason is a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). An employer "may hold an employee . . . who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." 42 U.S.C. § 12114 (c)(4).

Even assuming Christensen could demonstrate a prima facie case of discrimination, the City has articulated a legitimate nondiscriminatory reason for its actions which Christensen has failed to demonstrate is pretextual.

A. <u>The City Articulated a Legitimate Nondiscriminatory Reason for its Actions</u>

Schmaderer's decision to give Christensen an ultimatum of retirement or termination was based on Schmaderer's belief that Christensen had not followed through with alcohol treatment. Christensen's alcohol-related employment issues began almost three months before his termination. On May 20, 2015, another OPD officer encountered Christensen drinking and driving. On May 21, 2015, he was admitted to the hospital due to his blood alcohol level. On the same day, Deputy Chief M. Elizabeth Davis wrote a letter to Christensen stating "[p]er Chief Todd Schmaderer, this letter is to notify you that due to concerns about your continued abuse of alcohol, you are being ordered to comply

with the recommendations of Bergan Mercy Hospital medical staff and your counselor, Stephanie Levy." ECF No. 30-2, Page ID 155. It went on to state that "[i]f you fail to comply with the recommended treatment plan you are subject to discipline up to and including termination." *Id.* The letter was supplemented on May 22 and June 1, 2015. The June 1, 2015, correspondence from OPD outlined steps Christensen was required to take prior to returning to work.[11] Gonzalez Letter 6/1/15, ECF No. 30-4, Page ID 160-61.

On June 18, 2015, Christensen received a DUI citation and was placed on administrative leave with pay. Schmaderer Letter, ECF No. 33-6, Page ID 296. After his DUI citation, Christensen voluntarily entered inpatient alcohol treatment at Keystone Treatment Center. Upon release on July 22, 2015, Christensen agreed to Keystone's Continuing Care Plan. Unger checked with Christensen's treatment providers and found that as of July 31, 2015, Christensen had not contacted Dr. Cannon or appeared for any intensive outpatient group meetings and had rescheduled and then cancelled his meeting with Levy.[12] Unger Aff., ECF No. 30-13, Page ID 185-86. Unger was also unable to verify that Christensen had attended any AA meetings. *Id.* Unger shared this information with OPD command staff on August 4, 2015. *Id.* Schmaderer was "prepared to terminate Christensen based on the lack of follow through with his treatment program" but decided to give him the option to retire. Schmaderer Aff., ECF No. 30-1, Page ID 152.

---

[11] The June 1, 2015, letter which subjected Christensen to additional terms and conditions before allowing him to return to work was not itself discriminatory. *See Longen v. Waterous Co.*, 347 F.3d 685, 689 (8th Cir. 2003) ("all return-to-work agreements, by their nature, impose employment conditions different from those of other employees").

[12] As previously stated, Unger's statements regarding what she was told by Christensen's treatment providers are being considered only for the effect on her and not for the truth of the matters asserted regard Christensen's noncompliance.

10

It is unclear whether Schmaderer's decision to terminate Christensen was based on his belief that Christensen had not followed through with the treatment program outlined in the June 1, 2015, correspondence or the treatment program outlined in Keystone's Continuing Care Plan. Yet this is not material, because Christensen agreed to both plans; both required him to attend an intensive outpatient program; both required individual counseling; and his failure to comply with either plan constituted a legitimate nondiscriminatory reason for the City's actions.[13] *Kozisek*, 539 F.3d at 936. (Termination for failure to follow treatment recommendations was not discriminatory where there was evidence employee needed professional intervention and treatment had been recommended by a medical provider.). Thus, the City has provided a legitimate nondiscriminatory reason for its actions shifting the burden to Christensen to demonstrate pretext.

### B. Christensen Has Not Demonstrated the City's Reason Was Pretextual

A plaintiff may show pretext by demonstrating that the employer's proffered reason for the adverse employment action had no basis in fact. *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007). A plaintiff may also show pretext by demonstrating that an employer failed to follow its policies or treated similarly-situated employees in a

---

[13] Christensen's failure to comply with the Keystone treatment plan was a legitimate nondiscriminatory reason for his termination. The City could have terminated him based on his DUI, but the City gave him the chance to attempt yet another round of treatment. See *Office of Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102, 1107 (Fed. Cir. 1996) ("Treatment would seem to be essential to any accommodation for alcoholism. If an individual refuses treatment when offered, then discipline is appropriate."). Christensen's failure to comply with the terms of the June 1, 2015, correspondence after his discharge from Keystone was also a legitimate nondiscriminatory reason for the City's actions. *See Longen*, 347 F.3d at 689 ("all return-to-work agreements, by their nature, impose employment conditions different from those of other employees. As a result, courts have consistently found no disability discrimination in discharges pursuant to such agreements").

disparate manner. *E.E.O.C. v. Prod. Fabricators Inc.*, 763 F.3d 963, 970 (8th Cir. 2014) (citing *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).

*1. No Evidence of Christensen's Compliance with His Treatment Plan Before Schmaderer's Decision to Terminate Christensen's Employment*

Christensen testified that he complied with treatment requirements after he was released from Keystone. Christensen Dep., ECF No. 33-3, Page ID 270. Yet he admits that as of July 31, 2015, he had not appeared for intensive outpatient group sessions. He attributes his failure to the need to care for his children due to his ex-wife's medical condition. Christensen Dep., ECF No. 33-3, Page ID 270. Christensen also testified "I don't remember having to meet with [Levy]" and testified that he did not know whether he had seen Levy. *Id.* at 271. Christensen's testimony that he complied with the discharge plan and went to the intensive outpatient program demonstrates only that he complied with the plan at some point in time, but not that he complied before the decision to terminate him was made.

*2. Officers Who Were Allowed to Return to Work Were Not Similarly Situated*

"To be similarly situated, a plaintiff must show that he and the more leniently treated employees have 'comparable disciplinary histor[ies].'" *Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (quoting *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 692 (8th Cir. 2002)). "And the employees also 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id.* (quoting *Prod. Fabricators Inc.*, 763 F.3d at 970). To be similarly situated a comparator need not be a clone but must be similarly situated in all relevant respects. *Id.* (citation omitted).

Christensen argues that the discipline he received was harsher than that imposed on other officers who were not disabled. In support, Christensen points to the treatment of Sgt. Jerry Baggett, Sgt. Mark Noonan, Officer Shelia Cech, and Officer Wendy Redding.[14]

Baggett received a DUI in 2006 and retired in 2008. Chief Schmaderer did not participate in Baggett's discipline. Cech received a DUI in September 2012. She was suspended for twenty days, completed an alcohol awareness program, and successfully completed the terms of her probation. Cech did not have any other alcohol issues of which Schmaderer was aware. Noonan received a DUI in August 2015 and was suspended for twenty days. He then made restitution for damaged property, pled guilty to the DUI, completed an alcohol awareness program, and completed the terms of his probation. Noonan did not have any other alcohol issues of which Schmaderer was aware.

After a DUI in 2011, Redding received a fifteen-day suspension and Chief Hayes required her to complete a drug and alcohol dependency assessment and any recommended treatment. Redding 2011 Letter, ECF No. 30-8, Page ID 167-68. She was admonished that failure to complete treatment or further bad decisions regarding alcohol could lead to termination. *Id.* at 169. In 2015, Redding was stopped by police and suspected of driving under the influence. She did not receive a DUI, but she admitted during an internal interview that she had been drinking and should not have been driving.

---

[14] Christensen argues that Redding was considered disabled because she attended treatment for alcohol abuse, and that the City treated those who attended treatment more harshly than those who drove drunk but were not considered disabled.

Redding 2015 Letter, ECF No. 30-7, Page ID 164-65. As a result, Redding was terminated by Schmaderer who was aware of the 2011 incident. *Id.*

Christensen argues in his Complaint that he was treated more harshly than other officers who received DUIs but were not disabled. In his brief, he argues that he was treated differently because, unlike non-disabled officers, he was required to go to treatment and not allowed to return to work. His argument fails because Baggett's discipline was handled by a different supervisor, and Noonan and Cech, unlike Christensen, had not previously been disciplined for alcohol-related conduct. Redding, who had previous alcohol-related discipline, was terminated. Thus, no other officer was similarly situated to Christensen in all relevant respects, except Redding who was also terminated.

Further, nothing in the record suggests that any of the non-disabled officers received or agreed to receive alcohol treatment. This demonstrates that the officers Christensen contends were treated more favorably were not similarly situated to him in all relevant respects. Thus, Christensen has not shown that the City's reason for giving him an ultimatum of termination or retirement was pretext for disability discrimination, and his claim for disability discrimination in violation of the ADA and NFEPA[15] will be dismissed.

## II. Retaliation

---

[15] *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002) (citing *Father Flanagan's Boys' Home v. Agnew*, 590 N.W.2d 688, 693 (Neb. 1999); *IBP, Inc. v. Sands*, 563 N.W.2d 353, 357–59 (Neb. 1997)) ("In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA.").

To establish a prima facie case of retaliation, Christensen must show "(1) that he . . . engaged in statutorily protected activity; (2) an adverse employment action was taken against him . . . ; and (3) a causal connection exists between the two events." *Brunckhorst*, 914 F.3d at 1184 (quoting *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)). Once a prima facie case is established, the claim proceeds under the *McDonnell Douglas* burden-shifting framework. *Prod. Fabricators, Inc.*, 763 F.3d at 972 (citation omitted).

### A. Request for Leave to Attend Rehabilitation

In his brief, Christensen argues that a request for leave to attend treatment for alcohol dependency qualifies for ADA protection as a request for accommodation. The City does not dispute that a request for leave to attend treatment constitutes a request for accommodation, but the City notes that Christensen's Complaint does not mentioned a request for leave to attend treatment as a basis for a retaliation claim.

Christensen also contends OPD tried to preclude him from complying[16] with his post-treatment plan by sending notice of requirements to his OPD email account at a time OPD knew he did not have access to that account. Other than the accountability cards, Christensen has presented no evidence that correspondence regarding his treatment plan was sent to him by email. Nor has Christensen presented evidence that the City restricted his email access on June 2, 2015, when the accountability cards were sent, or on any date before August 17, 2015.

---

[16] Christensen does not specify how the plan was structured to preclude his compliance, other than his assertion that documents were sent to his City email address.

Christensen requested, and was granted, leave to attend rehabilitation approximately four months before his constructive termination. Christensen Dep., ECF No. 33-3, Page ID 257, 271. Without more, temporal proximity of four months does not create a genuine issue of material fact for the jury as to causation. *See Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (recognizing that more than two months is too long to support a finding of causation without something more).

### B. Request to End Confinement and Return to Work

In in support of his retaliation claim, Christensen alleges he requested that his home confinement and monitoring be lifted, and days later was constructively discharged. Christensen characterized his request as seeking Unger's permission to return to work. Christensen Dep., ECF NO. 33-3, Page ID 273.

Christensen's request to return to work does not qualify as a request for accommodation. *See Seiken v. Village of Arlington*, 65 F.3d 664, 667 (7th Cir. 1995) ("[Plaintiff] is not asking for an accommodation; he is not asking [the employer] to change anything. He is asking for another chance to allow him to change his monitoring technique. But the ADA does not require this."). Even if Christensen's request qualified as a request for accommodation, the City articulated a legitimate nondiscriminatory reason for his termination as discussed *supra* and Christensen has failed to demonstrate pretext.

For these reasons, Christensen's claim for retaliation[17] will be dismissed.

---

[17] Although Christensen asserts claims under at least two, and possibly three, statutes—Title VII, the NFEPA, and the ADA—the same analysis applies to all. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) ("Both the Nebraska Supreme Court and [the Eighth Circuit Court of Appeals] have stated the NFEPA 'is patterned after Title VII,' and, therefore, 'it is appropriate to consider federal

**CONCLUSION**

Christensen's claims for disability discrimination, Claims I and II, and his claim for retaliation, Claim III, will be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 28, filed by Defendant City of Omaha is granted;

2. The above-captioned matter is dismissed with prejudice;

3. The parties will bear their own attorney fees and costs; and

4. A separate judgment will be entered.

Dated this 22nd day of April 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge

---

court decisions construing the federal legislation' when considering questions under the NFEPA." (quoting *City of Fort Calhoun v. Collins*, 500 N.W.2d 822, 825 (Neb. 1993)); *Orr*, 297 F.3d at 723 (citing *Father Flanagan's Boys' Home*, 590 N.W.2d at 693; *IBP, Inc.*, 563 N.W.2d at 357–59 ("In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA.").